## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ALLAN T. PARR, JR., et al.**                                    **CIVIL ACTION**

**VERSUS**                                                        **NO. 24-438**

**YACHTINSURE, LTD**                                              **SECTION: "G"(4)**

## ORDER AND REASONS

Before the Court is Defendant Yachtinsure, Ltd.'s ("Defendant") "Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Complaint."[1] This litigation involves a maritime insurance coverage dispute following the partial sinking of a vessel owned by Plaintiffs Allan T. Parr, Jr. and Parr T, LLC (collectively "Plaintiffs").[2] Defendant argues that Plaintiffs have failed to state a claim because Plaintiffs allegedly violated express warranties contained in the insurance policy.[3] In opposition, Plaintiffs argue that the alleged violations of the express warranties did not cause the sinking of the vessel, and said warranties are prohibited by New York law.[4] Accepting all of the allegations in the Complaint as true, and for the reasons stated herein, the Court finds that coverage was properly denied. Accordingly, considering the motion, the record, and the applicable law, the Court grants the motion.

---

[1] Rec. Doc. 9.

[2] Rec. Doc. 1.

[3] Rec. Doc. 14.

[4] Rec. Doc. 12.

1

## I. Background

Plaintiff Parr T, LLC ("Parr T") owns and operates a 2016 77-foot Marquis Open Bridge Motor Yacht, the M/V AFTER PARR T ("the Vessel").[5] Plaintiff Allan T. Parr, Jr. ("Parr") is the sole member of Parr T and an owner/operator of the Vessel.[6] On April 3, 2023, Defendant issued an insurance policy to Plaintiffs providing hull and machinery, liability, and pollution coverage for the Vessel.[7] The policy provides for the application of general maritime law, and when general maritime law is unavailable, the laws of the State of New York shall be applied in determining "coverage or amount."[8]

On July 3, 2023, the Vessel left the port in Key West, Florida for a voyage with Parr and his family on board.[9] Parr, an approved operator listed on the policy, was operating the vessel.[10] Soon after the vessel departed, water began entering the vessel.[11] The Complaint alleges that an unseated hose clamp caused water to enter the hull via the propeller shaft.[12] Parr called for assistance, and a salvor arrived and identified the source of the leak.[13] The salvor packed the

---

[5] Rec. Doc. 1 at 1–2.

[6] *Id.* at 2.

[7] *Id.* at 3.

[8] *Id.* at 5.

[9] *Id.* at 9.

[10] *Id.* at 6.

[11] *Id.* at 9.

[12] *Id.*

[13] *Id.*

opening of the leak with rags, and he was able to pump the water from the Vessel.[14] The Vessel was immediately transferred to a shipyard where the Vessel's condition was stabilized, and the damage was repaired.[15]

Plaintiffs allege the Vessel was seaworthy at the commencement of the voyage, the Vessel was routinely inspected, and the loose hose clamp was never discovered.[16] The Complaint alleges the partial sinking of the Vessel was not caused by negligence, Parr's operation, or any unseaworthy condition of the Vessel.[17]

On July 26, 2023, after receiving timely notice of loss, Defendant denied the claim based upon several policy exclusions.[18] Plaintiffs repeatedly requested that Defendant reconsider the denial and proposed mediation, to which Defendant was unresponsive.[19]

On February 21, 2024, Plaintiffs filed a Complaint against Defendant alleging violations of Louisiana Revised Statute §§ 22:1892 and 22:1973.[20] Plaintiffs seek payment of insurance proceeds for property damages, consequential damages, bad faith penalties, attorney's fees, and interest.[21] On March 5, 2024, Plaintiffs filed an Amended Complaint.[22]

---

[14] *Id.*

[15] *Id.*

[16] *Id.* at 10.

[17] *Id.*

[18] *Id.* at 11.

[19] *Id.* at 12.

[20] *Id.* at 15–19.

[21] *Id.* at 22–23.

[22] Rec. Doc. 7.

On March 27, 2024, Defendant filed the instant motion.[23] On April 15, 2024, Plaintiffs filed an opposition to the motion.[24] On April 29, 2024, Defendant filed a reply memorandum in further support of the motion.[25]

On July 16, 2024, the Court ordered that the parties submit additional briefing regarding the applicability of *Thanh Long Partnership v. Highlands Insurance Co.,*[26] specifically, the Fifth Circuit's statement that "[b]reach of warranty, either express or implied, is insufficient to deny recovery unless the breach is also the cause of the loss."[27] On July 30, 2024, Defendant filed a supplemental memorandum.[28] On August 5, 2024, Plaintiffs filed a supplemental memorandum.[29]

## II. Parties' Arguments

### A. *Defendant's Arguments in Support of the Motion*

Defendant argues the Complaint contains admissions that Plaintiffs breached express warranties contained in the insurance policy.[30] Defendant contends binding Fifth Circuit precedent firmly establishes that a breach of an express warranty in a maritime insurance contract renders the coverage void.[31] Defendant asserts the policy makes clear that an approved operator and mate

---

[23] Rec. Doc. 9.

[24] Rec. Doc. 12.

[25] Rec. Doc. 19.

[26] 32 F.3d 189, 194 (5th Cir. 1994).

[27] Rec. Doc. 23.

[28] Rec. Doc. 24.

[29] Rec. Doc. 25.

[30] Rec. Doc. 9-1 at 7.

[31] *Id.*

must have been operating the vessel for it to be seaworthy.[32] At the time of the partial sinking, Defendant avers Parr was single-handedly operating the vessel in breach of the insurance policy.[33] Defendant submits the insurance policy is clear that this breach voids the policy from inception.[34]

Defendant argues that Parr's failure to have an approved captain onboard the vessel also demonstrates a lack of due diligence and a breach of the implied warranty of seaworthiness, which results in voiding of coverage.[35] Defendant contends federal maritime law is applicable and supports a denial of coverage based on breach of the express captain and crew warranty contained in the insurance policy and the implied warranty to maintain the Vessel in a seaworthy condition.[36]

**B.    *Plaintiffs' Arguments in Opposition to the Motion***

Plaintiffs cites Fifth Circuit precedent holding that a "breach of warranty, either express or implied, is insufficient to deny recovery unless the breach is also the cause of the loss."[37] Plaintiffs contend the partial sinking was unavoidable and caused by a water seal that became loose on the voyage.[38] Plaintiffs aver the incident occurred in the normal operation of the vessel, and the alleged warranties that were breached were not the cause of the loss.[39] Plaintiffs rely on *Travelers Property Casualty Company of America v. Ocean Reef Charters, LLC*, an Eleventh Circuit case holding that

---

[32] *Id.* at 9.

[33] *Id.* at 10.

[34] *Id.*

[35] *Id.*

[36] *Id.* at 10–11.

[37] Rec. Doc. 12 at 3 (citing *Thanh Long P'ship v. Highlands Ins. Co.*, 32 F.3d 189, 194 (5th Cir. 1994)).

[38] *Id.*

[39] *Id.*

5

Florida law prohibited insurers from relying upon warranty violations unless such breach or violation increased the hazard by any means within the control of the insured.[40]

Plaintiffs contend general maritime law does not recognize captain and crew warranties, and thus, New York law is applicable.[41] Plaintiffs argue New York law specifically prohibits named operator endorsements.[42] Plaintiffs cite a decision by a federal district judge in New York holding that New York law prohibits the enforcement of named operator endorsements unless the insured vessel is classified as an oceangoing vessel.[43] Based upon the geographical limitations set out in the insurance policy, Plaintiffs aver the vessel cannot be considered an oceangoing vessel.[44] For these reasons, Plaintiffs argue the named operator warranty is invalid and unenforceable.[45]

Plaintiffs also argue that they did not breach the implied warranty to maintain the Vessel in a seaworthy condition.[46] Plaintiffs argue general maritime law only requires that the vessel be reasonably fit for its intended purpose.[47] Plaintiffs contend the insurance policy also defines seaworthy as "fit for the insured vessel's intended purpose."[48] Plaintiffs assert that their only duty is to prove that the vessel was seaworthy upon inception of the policy and that the vessel was

---

[40] *Id.* at 4–5 (citing *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 996 F.3d 1161 (11th Cir. 2021)).

[41] *Id.* at 6.

[42] *Id.*

[43] *Id.* at 7 (citing *Jefferson Ins. Co. of New York v. Cassella*, 261 F. Supp. 2d 160, 165 (E.D.N.Y. 2003), *opinion vacated in part on reconsideration*, No. 00-5898, 2003 WL 23411876 (E.D.N.Y. Oct. 21, 2003)).

[44] *Id.*

[45] *Id.* at 8.

[46] *Id.*

[47] *Id.*

[48] *Id.* at 9.

adequately maintained.[49] Plaintiffs aver that an unexpected failure of the vessel mid-voyage does not create an unseaworthy condition at the inception of the policy, nor does it indicate a failure to maintain a seaworthy vessel.[50] Plaintiffs argue that any determination of seaworthiness would require a presentation of evidence and a factual determination.[51]

## C.    *Defendant's Arguments in Further Support of the Motion*

According to Defendant, the insurance policy clearly states that compliance with all warranties, including crew composition, is essential to the vessel's coverage.[52] Defendant contends it is well-established in maritime insurance law that a breach of an express warranty, regardless of its direct impact on a loss, voids coverage from inception if stipulated in the policy.[53] Defendant avers Florida law was applied in the case relied on by Plaintiffs in support of their argument that causation is required to deny coverage based on breach of express warranty.[54] Defendant asserts that under New York law, Plaintiffs' violation of the express warranties voids coverage.[55]

Contrary to Plaintiffs' assertions, Defendant contends the subject vessel is an ocean-going vessel under the insurance policy.[56] Defendant asserts the express navigation limits in the policy authorize the vessel to operate beyond inland waters, lakes, rivers, bays, tributaries, or sounds

---

[49] *Id.* at 10.

[50] *Id.*

[51] *Id.* at 12.

[52] Rec. Doc. 19 at 2.

[53] *Id.*

[54] *Id.* at 3 (citing *Ocean Reef Charters LLC*, 996 F.3d 1161).

[55] *Id.*

[56] *Id.* at 4.

designated by the geographical limits provided in *Jefferson Ins. v. Cassella*.[57] Defendant avers the insurance policy authorizes navigation up to 250 miles offshore and within the Atlantic Ocean, which qualifies the vessel as ocean-going.[58]

### D.    Defendant's Supplemental Memorandum

In its supplemental memorandum, Defendant contends that Plaintiffs' argument regarding causation is irrelevant.[59] Based on New York law and the plain terms of the policy, Defendant asserts Plaintiffs' breach of the warranty voids the policy from inception.[60]

Defendant contends that *Thanh Long*[61] is fundamentally different from the present case due to the difference in applicable state laws.[62] Defendant states that Louisiana law governed the maritime insurance contract in *Thanh Long*.[63] Under Louisiana law, Defendant avers a breach of warranty must also be the cause of the loss to deny recovery.[64] Defendant argues New York law does not require a causal connection between breach of warranty and loss to void coverage.[65]

---

[57] *Jefferson,* 261 F. Supp. 2d at 165.

[58] Rec. Doc. 19 at 5.

[59] Rec. Doc. 24 at 1.

[60] *Id.*

[61] 32 F.3d at 189.

[62] Rec. Doc. 24 at 2.

[63] *Id.*

[64] *Id.*

[65] *Id.* at 3.

Defendant avers New York law applies to the present case.[66] Defendant cites *Great Lakes Insurance, S.E. v. Gray Group Investments, LLC.,*[67] wherein the court applied New York law and held that the insured's breach of the warranty voided the contract without considering causation.[68] Under New York law, Defendant contends courts interpreting the terms of an insurance contract must give effect to the intent of the parties as expressed in the clear language of the contract.[69] Defendant asserts New York courts have consistently recognized that express warranties in maritime insurance contracts must be literally complied with, and that noncompliance forbids recovery, regardless of whether the omission had a causal relation to the loss.[70] Defendant contends this matter is more akin to *Great Lakes*, and this Court should likewise find that Plaintiffs' breach of the express warranty voids the policy.[71]

### E.    *Plaintiffs' Supplemental Memorandum*

According to Plaintiffs, *Thanh Long* held that causation is required in a breach of warranty evaluation pursuant to general maritime law, and Defendant has been unable to point to any case that holds otherwise.[72] Since there is general maritime law that controls the causation aspect of the

---

[66] *Id.*

[67] 577 F. Supp. 3d 466, 482 (E.D. La. 2021), *aff'd* 76 F.4th 341 (5th Cir. 2023).

[68] Rec. Doc. 24 at 3.

[69] *Id.*

[70] *Id.* at 4.

[71] *Id.* at 5–6.

[72] Rec. Doc. 25 at 1–2.

insurance coverage evaluation, Plaintiffs contend New York law is inapplicable.[73] Plaintiffs states that New York law only applies in an absence of federal precedent.[74]

The insurance policy provides that in the absence of federal maritime law, any dispute as to coverage shall be resolved according to the applicable law of the State of New York.[75] Plaintiffs state that the Fifth Circuit's holding in *Thanh Long* trumps New York law based on Supreme Court precedent and the terms of the insurance policy.[76]

Plaintiffs contend that *Great Lakes* is inapplicable because the court in *Great Lakes* did not address the issue of causation.[77] Plaintiffs state the Fifth Circuit's holding in *Great Lakes* did not take any position that changed the binding precedent found in *Thanh Long*.[78] Plaintiffs contend New York law prohibits named operator endorsements.[79] Plaintiffs aver that the named operator endorsement included in the instant insurance policy is invalid and unenforceable.[80]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed for "failure to state a claim upon which relief can be granted."[81] A motion to dismiss for failure to

---

[73] *Id.* at 2.

[74] *Id.*

[75] Rec. Doc. 25 at 3.

[76] *Id.* at 4.

[77] *Id.* at 6.

[78] *Id.* at 7.

[79] *Id.*

[80] *Id.* at 8.

[81] Fed. R. Civ. P. 12(b)(6).

state a claim is "viewed with disfavor and is rarely granted."[82] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[83] "Factual allegations must be enough to raise a right to relief above the speculative level."[84] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[85]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[86] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[87] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[88] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[89] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[90] That is, the complaint must offer more than an "unadorned, the-defendant-

---

[82] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[83] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[84] *Twombly*, 550 U.S. at 555.

[85] *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556).

[86] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[87] *Iqbal*, 556 U.S. at 678–79.

[88] *Id.* at 679.

[89] *Id.* at 678.

[90] *Id.*

unlawfully-harmed-me accusation."[91] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[92] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[93]

## IV. Analysis

According to Defendant, the Complaint contains admissions that Plaintiff breached express warranties within the insurance policy by single-handedly operating the vessel at the time of the partial sinking.[94] Defendant contends the denial of coverage is justified based on said breach.[95] Plaintiff argues the alleged breach of warranty must cause the loss to justify denial of recovery.[96] Plaintiff also asserts that general maritime law does not recognize crew warranties, and New York law specifically prohibits named operator endorsements.[97]

### A.    Whether Plaintiffs' Breach of the Express Warranty Voids the Policy

According to the Complaint, the vessel was being operated by Parr alone at the time of the partial sinking.[98] While Parr is a listed operator on the policy, this clearly breaches the express

---

[91] Id.

[92] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 257 (5th Cir. 2009).

[93] Carbe v. Lappin, 492 F.3d 325, 328 n.9 (5th Cir. 2007); Moore v. Metro. Hum. Serv. Dist., No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing Jones v. Bock, 549 U.S. 199, 215 (2007)).

[94] Rec. Doc. 9-1 at 7.

[95] Id.

[96] Rec. Doc. 12 at 3.

[97] Id. at 6.

[98] See Rec. Doc. 1.

warranty in the policy requiring a "minimum of one underwriter approved operator and one underwriter approved mate on board the Vessel at all times during navigation."[99] Whether said breach voids the policy is the question before the Court. To answer this question, the Court must first determine whether federal common law or New York law applies. The briefing by the parties is less than clear on this point. Defendant initially argued for the application of federal common law, while Plaintiff argued for the application of New York law.[100] However, in the supplemental briefs the parties switched course, with Defendant arguing for the application of New York law and Plaintiff arguing for the application of federal common law.[101]

The dispute in this case concerns a marine insurance policy issued for a vessel, giving rise to federal admiralty jurisdiction.[102] "Although the courts typically rely upon federal common law to resolve maritime disputes, state law occasionally can be used to supplement or even supersede maritime law."[103] In *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, the United States Supreme Court concluded that the regulation of marine insurance is properly left with the states where there is no established federal maritime rule governing the issue at hand.[104] As courts and legal commentators have recognized, for over 60 years the rule created in *Wilburn Boats* has sown much confusion with respect to the treatment of warranties in marine insurance policies.[105]

---

[99] Rec. Doc. 1-1 at 3.

[100] Rec. Docs. 9, 12.

[101] Rec. Docs. 19, 24, 25.

[102] *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 886 n.2 (5th Cir. 1991) (internal citations omitted) ("It is well settled that a marine insurance policy is a maritime contract within federal admiralty jurisdiction.").

[103] *Id.* at 886.

[104] *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 321 (1955).

[105] *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 996 F.3d 1161, 1162 (11th Cir. 2021) (citing 2 Thomas Schoenbaum, Admiralty and Maritime Law § 19:15 (6th ed. 2020); Gerard J. Mangone, United

Pursuant to *Wilburn Boat*, the Fifth Circuit has ruled that "the interpretation of a contract of marine insurance is—in the absence of a specific and controlling federal rule—to be determined by reference to appropriate state law."[106] The Fifth Circuit has called the presumption that state law applies to marine insurance policies "axiomatic."[107] "State law, therefore, governs the interpretation of marine insurance policies unless an available federal maritime rule controls the disputed issue."[108]

The instant maritime insurance policy contained a choice-of-law provision which states:

> [A]ny and all such litigation between you and us is to be resolved by reference to the well-established, entrenched principles of the federal maritime law of the United States. Only in the event that there is no such well-established, entrenched principle(s) of federal maritime law of the United States then only then shall the dispute as to coverage or amount be resolved according to the applicable law of the State of New York.[109]

The parties primarily rely on two Fifth Circuit cases in support of their arguments, *Great Lakes*[110] and *Thanh Long*.[111] *Great Lakes* is a recent case involving a dispute over insurance coverage of a yacht that sustained damage during a hurricane.[112] The insurer denied coverage

---

States Admiralty Law 247 (1997); I Alex L. Parks, The Law and Practice of Marine Insurance and Average 13 (1987).

[106] *Ingersoll–Rand Financial Corp. v. Employers Ins. of Wausau*, 771 F.2d 910, 912 (5th Cir. 1985).

[107] *Anh Thi Kieu*, 927 F.2d at 886 (quoting *INA of Texas v. Richard*, 800 F.2d 1379, 1380 (5th Cir. 1986)).

[108] *Id.*

[109] Rec. Doc. 1-2 at 14.

[110] *Great Lakes,* 76 F.4th 341.

[111] *Thanh Long,* 32 F.3d 189.

[112] *Great Lakes*, 577 F. Supp. 3d at 472.

alleging that the insured was in breach of the policy.[113] The insurance policy in *Great Lakes* contained a choice-of-law provision nearly identical to the instant insurance policy, stating that:

> [A]ny dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice, but where no such well-established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.[114]

The district court in *Great Lakes* applied New York law, reasoning "[t]here is no federal maritime rule governing the construction of maritime insurance contracts. Furthermore, neither party argues for the application of federal maritime law, nor does either party cite any maritime authority on the construction of maritime insurance contracts."[115] Ultimately, applying New York law, the district court in *Great Lakes* held that the insurer's breach of the express warranty to dock the vessel in a specific marina rendered the policy void,[116] and the Fifth Circuit affirmed that determination.[117] In the reply brief, Defendant argues that this Court should adhere to the Fifth Circuit's reasoning in *Great Lakes*, apply New York law, and dismiss Plaintiffs' claims based on the breach of the express warranty.[118]

Plaintiff primarily relies on a statement in *Thanh Long*, a case decided by the Fifth Circuit in 1994, stating "[b]reach of the express warranty in this maritime insurance policy voids coverage

---

[113] *Id.*

[114] *Id.* at 471.

[115] *Great Lakes Ins., S.E. v. Gray Grp. Invs., LLC*, 550 F. Supp. 3d 364, 371 (E.D. La. 2021) (citing *Higginbotham v. South Central Towing Co., Inc.*, No. 09-390, 2010 WL 2921637, at *2 (W.D. La. July 16, 2010).

[116] *Great Lakes*, 577 F. Supp. 3d at 482.

[117] *Great Lakes*, 76 F.4th at 352.

[118] Rec. Doc. 19 at 2–4.

under either Louisiana law or federal maritime precedent."[119]  In *Thanh Long,* the insurer sought to void coverage for the vessel sinking because the insured breached the express warranty of having an operable bilge alarm.[120] The Fifth Circuit held "that Thanh Long's breach of the express warranty to maintain an operable high water bilge alarm voids coverage as to this casualty."[121]

The Fifth Circuit then stated "[b]reach of warranty, either express or implied, is insufficient to deny recovery unless the breach is also the cause of the loss."[122] Notably, the Fifth Circuit did not cite any authority for this blanket statement, and it did not explain whether this statement is a statement of Louisiana law, federal law, or both. Additionally, this statement appears to be dicta, as the Fifth Circuit had already found that the breach of the warranty voided coverage, without discussing causation. Nevertheless, the Fifth Circuit concluded there was sufficient evidence to support the district court's factual finding that the breach caused the loss.[123] Plaintiffs argue that this Court should adhere to the Fifth Circuit's reasoning in *Thanh Long* and deny Defendant's motion because Plaintiffs' breach of the express warranty did not cause the loss.

Both *Great Lakes* and *Thanh Long* provide limited value in resolving the issue of whether to apply New York law or federal common law to the captain and crew warranty, as neither involved a breach of a captain and crew warranty. *Wilburn Boat* instructs courts "to look to see if the *specific* warranty at issue is (or should be) the subject of a uniform or entrenched federal

---

[119] 32 F.3d at 194.

[120] *Id.* at 191–92.

[121] *Id.* at 194.

[122] *Id.*

[123] *Id.*

admiralty rule."[124] The parties do not cite, and the Court has been unable to locate, any Fifth Circuit authority addressing named operator warranties, which are also known as captain and crew warranties. Recently, the Eleventh Circuit held that there are no entrenched federal maritime rules governing captain and crew warranties.[125] The Eleventh Circuit cited two cases addressing the breach of a captain warranty, both of which applied state law.[126] The Eleventh Circuit concluded that Florida law should apply to the breach of the captain and crew warranties at issue in that case.[127]

The Fifth Circuit has identified three factors for courts to consider when deciding whether to apply state or federal law under *Wilburn Boat.*[128] Specifically, the Fifth Circuit directed a district court faced with making such a determination to consider: (1) whether the federal maritime rule constitutes "entrenched federal precedent" consistently used to control the conduct of maritime actors, (2) whether the state has a substantial and legitimate interest in having its law applied, and (3) whether the state rule is materially different from the federal rule.[129] "These factors are merely instructive and not dispositive."[130]

These factors weigh in favor of applying New York law to the named operator (captain and crew) warranty. First, the proposition of law in *Thanh Long* relied on by Plaintiffs, which requires

---

[124] *Ocean Reef*, 996 F.3d at 1167 (citation omitted).

[125] *Id.* at 1169.

[126] *Id.* (citing *Yu v. Albany Ins. Co.*, 281 F.3d 803, 808-09 (9th Cir. 2002) (Hawaii law); *Northern Assurance Co. of America v. Rathbum*, 567 F.Supp.2d 316, 319 (D. Conn. 2008) (Connecticut law)).

[127] *Id.* at 1170.

[128] *Anh Thi Kieu,* 927 F.2d at 886.

[129] *Id.* (internal citations omitted).

[130] *Id.* (internal citations omitted).

the insured's breach of the express warranty to be the cause of loss to deny recovery, has only been cited by two courts since 1994.[131] By any standard, such authority hardly can be termed an "entrenched federal precedent" consistently used to control the conduct of maritime actors.[132] This rule is contrary to numerous other opinions holding that breach of a warranty in a marine insurance policy constitutes an absolute bar to coverage—notwithstanding that the loss was not caused by the breach.[133]

Second, the Fifth Circuit has recognized that states have a "substantial and legitimate interest in the application of [their] law[s]."[134] The "regulation of insurance relationships, including marine insurance relationships, has historically been a matter of state concern."[135] The Fifth Circuit concluded that "states are far better equipped to balance the risks that each party to

---

[131] *See D & L Marine Transp. Inc.,* 2003 WL 22384952 at *4 n. 14 (E.D. La. Oct. 14, 2003); *see also ING Insurance SA v. Pagan Sanchez,* 2007 WL 9735533 at *3 (D. Puerto Rico Mar. 26, 2007).

[132] *See e.g., 5801 Associates, Ltd. v. Continental Ins. Co.*, 983 F.2d 662, 665 (5th Cir. 1993).

[133] *Openwater Safety IV, LLC v. Great Lakes Ins. SE*, 435 F. Supp. 3d 1142, 1155 (D. Colo. 2020) ("The rule pursuant to federal admiralty law, if one exists, is that breach of a warranty in a marine insurance policy constitutes an absolute bar to coverage—notwithstanding that the loss was not caused by the breach."); *Maclean v. Travelers Ins. Co.*, 299 F. Supp. 3d 231 (D. Mass. 2017) (applying federal admiralty law and granting marine insurer's motion to dismiss after finding that the insured breached a named operator warranty, despite the fact that breach played no role in the loss); *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters, LLC*, 396 F. Supp. 3d 1170, 1177 (S.D. Fla. 2019) (applying a "well-entrenched" federal admiralty law that "all express warranties in maritime contracts are to be strictly construed."); *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1366 (11th Cir. 1988) ("[A]dmiralty law requires the strict construction of express warranties in marine insurance contracts; breach of the express warranty by the insured releases the insurance company from liability even if compliance with the warranty would not have avoided the loss."); *Aguirre v. Citizens Cas. Co. of New York*, 441 F.2d 141, 143–45 (5th Cir. 1991), *cert. denied*, 404 U.S. 829, 92 S.Ct. 65, 30 L. Ed. 2d 58 (1971) (applying "solidly entrenched" federal admiralty law and concluding that the "owners' breach of their express warranty...suspended coverage under the insurance policy."); *Home Ins. Co. v. Ciconett*, 179 F.2d 892 (6th Cir. 1950) (applying admiralty law and concluding that "[i]t is settled that a warranty in a contract of insurance must be literally complied with; that the only question in such cases is whether the thing warranted to be performed was or was not performed; and that a breach of the warranty releases the [insurer] from liability regardless of the fact that a compliance with the warranty would not have avoided the loss.").

[134] *Anh Thi Kieu,* 927 F.2d at 887.

[135] *Id.* (citing *Wilburn Boat Co.*, 348 U.S. at 316).

an insurance contract endures."[136] Similarly, New York has a substantial and legitimate interest in the application of its own insurance laws.

The final factor delineated by the Fifth Circuit is whether the state's rule is materially different from the federal maritime rule.[137] When considering this factor, the Fifth Circuit found the fundamental nature of both laws to be the same where both "share[d] the concern of federal maritime law that an assured should not profit from her material misrepresentations to the underwriter."[138] Plaintiff has not demonstrated that application of New York law is materially different from any federal maritime rule. As discussed above, there is no entrenched federal precedent requiring that a breach be the cause of the loss. Accordingly, the Court looks to New York law to determine whether the named operator.

**B.      *Whether the Captain and Crew Warranty is Enforceable Under New York Law***

Defendant argues that denial of coverage was proper based on Plaintiffs admitted breach of express captain and crew warranty in the policy. In opposition, Plaintiff argues New York law prohibits operator named endorsements like the captain and crew warranties.

The insurance policy states the following regarding approved operators and mate. Item 15 on the Policy Declaration reads, "Special Conditions… Warranted there is a minimum of one underwriter approved mate on board the vessel at all times during navigation."[139] Item 7 on the

---

[136] *Id.*

[137] *Id.*

[138] *Id.*

[139] Rec. Doc. 1-1 at 3.

Policy Declaration lists as operators Captain Jose Hernan Maciel and Alan Parr (approved

mate).[140]

Paragraph 9 of the "General Exclusions" section of the policy states:

All policy coverages are excluded in their entirety when the insured vessel is being
operated by anyone other than those listed as named operators including those listed
on any bareboat charter agreement. Except in the event a listed named operator is
incapacitated and/or is otherwise unavailable due to injury or illness, when
coverage is extended to a substitute operator for the duration of the voyage.[141]

Paragraph 14 of the "General Exclusions" section of the policy states:

Unless it is agreed between us and you in writing and upon payment of the
additional premium and the appropriate endorsement issued, this insuring
agreement does not cover any loss howsoever caused and or any liability incurred
whilst the insured sailing vessel hereon is operated by one person only, i.e. "single
handed". This exclusion does not apply to operation of the insured vessel without
sail(s) aloft within the confines of a marina.[142]

Plaintiff argues that New York law prohibits named operator endorsements like the

provisions here, and thus, the captain and crew warranty in the insurance policy is

unenforceable.[143] Plaintiff cites New York Insurance Law § 3420(e), which states:

(e) No policy or contract of personal injury liability insurance or of property
damage liability insurance, covering liability arising from the ownership,
maintenance or operation of any motor vehicle or of any vehicle as defined in
section three hundred eighty-eight of the vehicle and traffic law, or an aircraft, or
any vessel as defined in section forty-eight of the navigation law, shall be issued or
delivered in this state to the owner thereof, or shall be issued or delivered by any
authorized insurer upon any such vehicle or aircraft or vessel then principally
garaged or principally used in this state, unless it contains a provision insuring the
named insured against liability for death or injury sustained, or loss or damage
occasioned within the coverage of the policy or contract, as a result of negligence

---

[140] *Id.* at 1.

[141] Rec. Doc. 1-2 at 4.

[142] *Id.* at 4.

[143] *Id.* at 6–7.

in the operation or use of such vehicle, aircraft or vessel, as the case may be, by any person operating or using the same with the permission, express or implied, of the named insured.[144]

Plaintiffs rely on *Jefferson*[145] in support of their argument. In *Jefferson*, the boat was being operated, with permission of the owner, by a person not named on the insurance policy.[146] The policy contained a term that stated "[t]he person(s) listed on the following schedule is/are to be the sole operator(s) of the insured vessel. If the insured vessel is operated by any other person(s), this insurance is null and void."[147] The insurer denied coverage because the person operating the vessel was not listed on the insurance policy. The court found that the language of the endorsement directly violated N.Y. Ins. § 3420(e).[148] "Where a provision of the insurance policy does not comport with the public policies codified in N.Y. Ins. § 3420(e), it is void."[149] Thus, the court concluded that the endorsement provision was unenforceable.[150]

In finding that the endorsement provision violated N.Y. Ins. § 3420(e), the court in *Jefferson* considered whether the vessel was oceangoing, which would trigger the exclusion enunciated in N.Y. Ins. § 3420(i). The New York Insurance Law does not define the term "ocean-going vessel." Courts have concluded that "[t]he policy itself determines whether it is the kind

---

[144] N.Y. Ins. Law § 3420(e) (McKinney's 2023).

[145] *Jefferson,* 261 F.Supp. 2d 160.

[146] *Id.*

[147] *Id.* at 165.

[148] *Id.*

[149] *Id.* (citing *Royal Indem. Co. v. Providence Washington Ins. Co.,* 92 N.Y.2d 653, 658, 684 N.Y.S.2d 470, 707 N.E.2d 425 (1998) ("the exclusion violates our public policy and is void.")).

[150] *Id.*

intended to cover 'oceangoing vessels.'"[151] In *Jefferson*, the court looked to the geographical limits of the policy to determine whether the vessel was oceangoing. There, the vessel was to be confined to the "[w]aters of Long Island Sound and Great South Bay."[152] The court concluded that the vessel was not an ocean-going vessel, and thus, N.Y. Ins. § 3420(e) applied to the policy.

In contrast, the insurance policy in the instant matter defines the navigational limits of the subject vessel as "[w]aters of Eastport Maine to Brownsville Texas and the Bahamas (excluding Cuba) not exceeding 250 miles offshore."[153] This includes waters within the North Atlantic Ocean and goes beyond inland waters, lakes, rivers, bays, bays, tributaries, or sounds.[154] As such, the Court finds that the subject vessel is oceangoing, and thus, N.Y. Ins. § 3420(e) is inapplicable. For this reason, the captain and crew warranty is enforceable under New York law.

Under New York law, courts interpreting the terms of an insurance contract must give effect to the intent of the parties as expressed in the clear language of the contract.[155] "If the 'language is unambiguous, the court will discern the parties' intent from the document itself as a matter of law.'"[156] "Under New York law, 'warranties in maritime insurance contracts must be strictly complied with, even if they are collateral to the primary risk that is the subject of the

---

[151] *Progressive NE Ins. Co. v. Am. Ins. Co.*, 2001 WL 959183, at *3 (S.D.N.Y. Aug. 21, 2001) (quoting N.Y. Ins. § 2117(b)(3)(B)).

[152] *Jefferson,* 261 F. Supp. 2d at 162.

[153] Rec. Doc. 1-1 at 1.

[154] *See Progressive Northeastern*, 2001 WL 959183 at *3.

[155] *Great Lakes Ins.*, 577 F. Supp. 3d at 473.

[156] *Id.* at 473–74 (quoting *Jefferson Block 24 Oil & Gas, L.L.C. v. Aspen Ins. UK Ltd.*, 652 F.3d 584, 589 (5th Cir. 2011) (applying New York law)).

contract, if the insured is to recover.'"[157] "As explained by the Second Circuit, 'the rule of strict compliance with warranties in marine insurance contracts stems from the recognition that it is peculiarly difficult for marine insurers to assess their risk, such that insurers must rely on the representations and warranties made by insureds regarding their vessels' condition and usage.'"[158]

New York courts have consistently recognized that express warranties in maritime insurance contracts must be literally complied with, and that noncompliance forbids recovery, regardless of whether the omission had a causal relation to the loss.[159] Accepting all the allegations in the Complaint as true, Plaintiffs admit they violated the captain and crew warranty because Parr was operating the vessel alone at the time of the partial sinking. Under New York law, this breach of the express warranty voids coverage, regardless of whether the breach caused the loss. Therefore, the Court finds that coverage was properly denied, and the case must be dismissed.

## V. Conclusion

For the reasons stated herein, Plaintiffs' undisputed breach of the express captain and crew warranty voided coverage under applicable New York law. Defendant's properly denied coverage when the vessel partially sank. Thus, Plaintiff's claim must be dismissed. Accordingly,

---

[157] *Id.* at 482 (quoting *Commercial Union Ins. Co. v. Flagship Marine Servs.*, 190 F.3d 26, 31 (2d Cir. 1999)).

[158] *Id.* (quoting *Commercial Union*, 190 F.3d at 31).

[159] *Ins. Co. of N. Am. v. Zaglool*, 526 F. Supp. 2d 361, 366 (E.D.N.Y. 2007) (named operator warranty, inter alia, barred coverage); *Commercial Union*, 190 F.3d at 31 (breach of tow warranty barred coverage); *Triple Diamond Café, Inc. v. Certain Underwriters at Lloyd's London*, 124 A.D.3d 763 (N.Y. 2015) (breach of alarm system warranty, violating requirement for fully operational status, barred coverage); *Jarvis Towing & Transp. Corp. v. Aetna Ins. Co.*, 298 N.Y. 280 (1948) (breach of express warranty requiring thorough and frequent vessel inspections, including bilges, while moored, barred coverage).

**IT IS ORDERED** that the Motion to Dismiss[160] is **GRANTED**. Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE**.


**NEW ORLEANS, LOUISIANA** this __26th__ day of February, 2025.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---
[160] Rec. Doc. 9.